UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RUTHIE A. CARGILE,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-337
Dlott, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 8) and the Commissioner's response in opposition (Doc. 13).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in February 2011, alleging disability since December 17, 2010, due to glaucoma. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) George Gaffaney. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On November 23, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2011.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since December 17, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairment: glaucoma (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. The [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following non-exertional limitations: the [plaintiff] is able to perform work activity that requires frequent, rather than constant, use of far acuity and only occasional use of depth perception.
>
> 6. The [plaintiff] has past relevant work as a cleaner, housekeeper, assembler II, and day care worker, and the [plaintiff] is capable of performing past relevant work as a day care worker. This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from December 17, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 20-24).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

4

### D. Specific Errors

On appeal, plaintiff argues that the ALJ erred by: (1) failing to properly consider the limitations caused by her visual impairment; and (2) failing to properly consider all the treating source opinions of record. (Doc. 8).

**1. The ALJ's consideration of limitations caused by plaintiff's visual impairment**

Plaintiff alleges that the ALJ's decision is contrary to law because the ALJ found she can return to her past work as a "nursery school attendant" despite evidence showing she lacks the ability to perform all of the essential duties of that job.[1] Plaintiff alleges that the ALJ improperly characterized the nature and exertional requirements of her past relevant work based on the VE's testimony. Plaintiff also alleges that in making his determination, the ALJ failed to comply with Social Security Rulings that govern visual impairments. (Doc. 8 at 3-6).

The role of the VE is to advise the ALJ of jobs in various employment categories that the plaintiff is able to perform given her limitations. *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009). The ALJ may choose to rely on the VE's testimony "given the VE's ability to tailor her finding to an 'individual's particular residual functional capacity.'" *Id.* (citing *Wright v. Massanari,* 321 F.3d 611, 616 (6th Cir. 2003)). In order for a VE's testimony in response to a hypothetical question to constitute substantial evidence in support of the ALJ's finding as to the work the claimant can perform, the question must accurately portray a claimant's impairments. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citing *Howard v. Comm'r of Social Sec.,* 276 F.3d at 239, 241 (6th Cir. 2002)).

---

[1] The ALJ actually characterized plaintiff's past relevant work as "day care worker." (Tr. 23).

5

Here, the VE testified that plaintiff's prior job falls under #359.677-018 of the Dictionary of Occupational Titles (DOT). (Tr. 58). This section of the DOT covers the occupation of "nursery school attendant" or "child-care leader" and describes the duties of this occupation as follows:

> Child-day-care center worker; day care worker[:] Organizes and leads activities of prekindergarten children in nursery schools or in playrooms operated for patrons of theaters, department stores, hotels, and similar organizations: Helps children remove outer garments. Organizes and participates in games, reads to children, and teaches them simple painting, drawing, handwork, songs, and similar activities. Directs children in eating, resting, and toileting. Helps children develop habits of caring for own clothing and picking up and putting away toys and books. Maintains discipline. May serve meals and refreshments to children and regulate rest periods. May assist in preparing food and cleaning quarters.

DOT #359.677-018. *See* http://www.occupationalinfo.org/. The DOT categorizes the job as light. (*Id.*). The VE testified that the exertional level of plaintiff's prior position was light and the job required occasional near acuity, far acuity, field of vision, and depth perception. (Tr. 58, 64, 65). The VE testified that if the hypothetical individual were limited to lifting 20 pounds occasionally and ten pounds frequently, standing and sitting six hours each in an eight-hour workday, and frequent far acuity and occasional depth perception, the individual would be able to perform the day care worker job. (Tr. 62, 64-65). The ALJ relied on the VE's testimony in determining that plaintiff's past relevant work as a day care worker does not require the performance of work-related activities precluded by her RFC.[2] (Tr. 23).

Plaintiff challenges the ALJ's findings made in reliance on the VE's testimony. Plaintiff alleges there is a "significant question" as to whether her prior job is properly characterized as a

---

[2] The ALJ found that plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) except that she is limited to "frequent, rather than constant, use of far acuity and only occasional use of depth perception." (Tr. 22).

6

"nursery school attendant" under DOT #359.677-018. (Doc. 8 at 3-4). Plaintiff contends the exertional level of her prior work was "medium," not light, because her responsibilities included caring for infants, keeping daily reports on the infants in her charge, and walking approximately six hours each day. (*Id.* at 4, citing Tr. 223). Plaintiff further alleges that the day care worker position described in the DOT, which involves caring for prekindergarten children in nursery schools or playrooms, requires the performance of a variety of duties that her prior job caring for infants did not. (*Id.* at 3-4).

Plaintiff has not shown that the VE improperly categorized her past relevant work under the DOT. Each occupation listed in the DOT represents numerous individual jobs with similar duties, and within each occupation "there may be variations among jobs performed for different employers." *Beinlich*, 345 F. App'x at 168 (citing *Wright*, 321 F.3d at 616; SSR 96-9p, 1996 WL 374185, at *10, n.4). *See also* SSR 00-4p, 2000 WL 1898704, at *3 (noting that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."). Thus, the VE's testimony was not erroneous simply because the duties of plaintiff's prior job do not align exactly with the duties of her position as described in the DOT.

Further, pursuant to SSR 82-61, it is not necessary that an individual retain the capability to perform her prior job as she actually performed it in order to be deemed capable of performing her past relevant work. SSR 82-61, 1982 WL 31387, at *1-2. Rather, this is one of only three possible tests for determining whether a claimant retains the capacity to perform her past relevant work, which include: (1) whether the claimant "retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job"; (2) whether the claimant

7

retains the capacity to perform the particular functional demands and job duties of her past job as she actually performed it; and (3) "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Id.* Here, the VE's testimony that plaintiff's prior job falls under the category of "day care worker," coupled with his testimony that the functional demands of the job would not exceed plaintiff's RFC for a restricted range of light work, supports a finding that plaintiff could perform her past relevant work as a day care worker as that job is ordinarily performed in the national economy. (Tr. 58, 62-65). Plaintiff has not pointed to any evidence which contradicts the VE's testimony and shows that she performed her prior job at the medium level. To the contrary, plaintiff's own description of the exertional requirements of her prior day care worker job, which included walking for six hours, sitting for one hour, and lifting up to ten pounds, indicates she performed the job at the light exertional level. (Doc. 8 at 4, citing Tr. 223). *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (defining "light work" as work which involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing. . . ."). For these reasons, although the duties of plaintiff's prior job may not align exactly with the duties of her position as described in the DOT, the ALJ reasonably relied on the VE's testimony to find that plaintiff could perform her past relevant work.

Plaintiff alleges that even assuming her past job is properly characterized as "nursery school attendant," the ALJ nonetheless erred by failing to comply with Social Security Rulings 83-14 and 85-15.[3] (Doc. 8 at 3-5). SSR 83-14 states, in pertinent part:

> Where a person has a visual impairment which is not of Listing severity but causes the person to be a hazard to self and others--usually a constriction of visual fields rather than a loss of acuity--the manifestations of tripping over boxes while walking, inability to detect approaching persons or objects, difficulty in walking up and down stairs, etc., will indicate to the decisionmaker that the remaining occupational base is significantly diminished for light work (and medium work as well).

SSR 83-14, 1983 WL 31254, at *5. SSR 85-15 provides as follows:

> As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels. However, a finding of disability could be appropriate in the relatively few instances in which the claimant's vocational profile is extremely adverse, e.g., closely approaching retirement age, limited education or less, unskilled or no transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential.

SSR 85-15, 1985 WL 56857, at *8. Plaintiff alleges that in accordance with these Rulings, jobs such as "nursery school attendant" should have been excluded from consideration by the ALJ in light of plaintiff's advanced age and limited visual field. (Doc. 8 at 6). Plaintiff contends that she cannot perform all of the duties of the job because the record shows her visual field acuity is constantly limited, which means she cannot use depth perception and far acuity on even an occasional basis as required to perform this job. (*Id.* at 6). Plaintiff asserts there is no medical

---

[3] Plaintiff suggests in connection with this allegation of error that she received accommodations to perform her prior job, but she has not presented any arguments related to this issue and has therefore waived any alleged error related to the issue. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1998) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

support for the ALJ's findings that she can use far acuity frequently and depth perception occasionally. (*Id.* at 5-6). Plaintiff alleges the medical records and her testimony show that her level of impairment is such that a restriction to light level work significantly diminishes the occupational base and suggests a finding of disabled. (*Id.* at 5). Plaintiff further suggests that the opinion of the consultative examiner, Dr. David Lasse, OD, that she could "function in office situations that do not involve fine details to look at" (Tr. 325), which the ALJ assigned "great weight," does not support the ALJ's decision because her prior job as a "nursery school attendant" was not a job of this nature. (*Id.* at 5).

In response, the Commissioner argues that the ALJ reasonably relied on the VE's testimony to find that plaintiff could perform her past work given her RFC. (Doc. 13 at 3, citing *Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (ALJ may rely on VE's testimony in response to hypothetical question to find the plaintiff has vocational qualifications to perform specific jobs)). The Commissioner states that while the Social Security Rulings cited by plaintiff provide that visual impairments can possibly erode the occupational base in certain situations, they do not mandate a finding of disability in this case. (*Id.*).

Plaintiff has not shown that the ALJ erred by failing to take SSR 83-14 and 85-15 into consideration.[4] While these policy rulings indicate that visual impairments *can* erode the occupational base, especially for individuals in plaintiff's age group, plaintiff has not pointed to any evidence to show that a finding of disability is mandated under the facts of this case.

---

[4] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1)." *Ferguson v. Comm'r of Soc Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010). The Sixth Circuit has refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations but has assumed that they are. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2001)).

Plaintiff alleges that the occupational base would be "significantly diminished" and a finding of disabled is required because she "would be at risk to see objects on the floor which would abundant [sic] in a nursery"; "when working with babies, she would be required to carry them which would create a hazard from tripping or not seeing another person approaching"; and she also has reported falls. (Doc. 8 at 5). However, plaintiff has not cited any objective evidence to substantiate her allegations and show her visual impairments impose the limitations she alleges. It is plaintiff's burden to provide evidence showing how her impairment affects her functioning during the period of alleged disability. 20 C.F.R. §§ 404.1512, 416.912. Plaintiff's allegations, unsupported by any objective evidence, are not sufficient to establish disabling limitations as is her burden at the fourth stage of the sequential evaluation process. *See Troth v. Comm'r of Social Security*, No. 3:11-cv-272, 2012 WL 1185999, at *6 (Apr. 9, 2012) (Black, J.) (where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions") (quoting *Freudenberger v. Astrue*, No. 1:09-cv-745, 2011 WL 1114407 (S.D. Ohio Feb. 28, 2011) (Report and Recommendation) (Bowman, M.J.), *adopted*, 2011 WL 1119569 (S.D. Ohio March 24, 2011) (Spiegel, J.).

Nor does the medical evidence of record substantiate plaintiff's allegations. No medical source of record opined that plaintiff's visual impairments would cause her to be a hazard to herself or others. Plaintiff's treating physician, Dr. Setu Trivedi, M.D., did not address visual limitations resulting from her glaucoma in the assessment he issued. (Tr. 494-98). Examining optometrist Dr. David Lasse, OD, simply opined in April 2011 that plaintiff could drive and "could function in office situations that do not involve fine details to look at," but he did not impose specific restrictions beyond this. (Tr. 324-29). Nonexamining state agency physician

11

Dr. Gary Spitz, M.D., an ophthalmologist, opined in September 2011 that plaintiff's visual impairment was moderate. (Tr. 394). Dr. Spitz opined that plaintiff would be precluded from work requiring good depth perception such as driving or working at unprotected heights or with hazardous machinery due to "limited depth perception, limited field of vision," and the need to "avoid concentrated exposure to hazards"; neither far nor near acuity were limited as acuity in plaintiff's better eye was within normal limits and her acuity was sufficient to perform clerical work ("reading normal size print, typing, filing or using a computer"); and plaintiff retained sufficient visual acuity to handle and work with any size objects and she had the visual fields necessary to avoid ordinary hazards in the workplace. (*Id.*). The ALJ reasonably relied on these opinions to assess the limitations resulting from plaintiff's visual impairment. Plaintiff has not cited evidence in the record to show the ALJ erred by failing to impose additional restrictions to account for her glaucoma.

Finally, plaintiff alleges that the ALJ arbitrarily limited her to work that requires far acuity on a frequent basis and depth perception on an occasional basis. Plaintiff alleges that the record shows she cannot use depth perception and far acuity to any extent because her visual impairment is always present. (Doc. 8 at 5-6). However, plaintiff points to no medical evidence which shows her glaucoma imposes greater functional limits on her far acuity and depth perception than those assessed by the ALJ. Because plaintiff has failed to present evidence to support the limitations alleged, she has not carried her burden to establish disability. *Troth*, No. 3:11-cv-272, 2012 WL 1185999, at *6.

Plaintiff's first assignment of error should be overruled.

### 2. Evaluation of the medical opinions of record

Plaintiff alleges that the ALJ erred by failing to consider an Ohio Bureau of Vocational Rehabilitation (OBVR) vocational assessment of record and by failing to properly consider the opinion of plaintiff's treating physician, Dr. Trivedi. (Doc. 8 at 7-8). Plaintiff alleges that the ALJ thereby failed to comply with the Social Security Regulations and Rulings which require the ALJ to consider all relevant evidence, including evidence from non-medical sources. (*Id.* at 7, citing 20 C.F.R. § 404.1527(b), SSR 06-3p). Plaintiff alleges the OBVR report imposes significant limitations which are supported by Dr. Trivedi's assessment. (*Id.*, citing Tr. 497). Plaintiff further alleges that the ALJ erred by assigning "very little weight" to Dr. Trivedi's report. (*Id.* at 8). Plaintiff alleges that the ALJ selectively quoted the report and took statements out of context to create the mistaken impression that Dr. Trivedi's assessment was inconsistent. (*Id.* at 8).

The Commissioner argues in response that the ALJ gave "good reasons" for giving Dr. Trivedi's assessment "very little weight," and those reasons are substantially supported by the record. (Doc. 13 at 4-6). The Commissioner further argues that while the ALJ did not expressly consider the OBVR report, any error in this respect was harmless because the OBVR counselor is not an "acceptable medical source" under the regulations; the ALJ explicitly considered the information contained in the report; and there is no indication the OBVR report is inconsistent with the ALJ's conclusion that plaintiff can perform her past relevant work as a day care worker.

The OBVR assessment was completed by a Rehabilitation Services Commission (RSC) Counselor in January 2011. (Tr. 452). The assessment documents plaintiff's eligibility for

13

vocational rehabilitation services based on the following limitations: she "cannot read standard print for an extended duration or access computer without accommodations," she "can drive only short and familiar routes," she "can do visually related tasks for 1 hour before requiring a break," and she "cannot do work tasks requiring detailed vision or quick visual scanning." (*Id.*). The ALJ did not explicitly reference the OBVR report in his written decision; however, the ALJ expressly considered the specific functional limitations alleged in the report and found that the symptoms and limitations alleged by plaintiff were not fully supported by the record. (Tr. 22-23). The ALJ thereby fulfilled his obligation under the Act to consider the information contained in the OBVR report. *See* SSR 06-03p, 2006 WL 2329939, at *4 (the Act requires consideration of all of the relevant evidence in the claimant's case record). The ALJ was not required to go beyond this and determine what weight to give the report because the OBVR counselor is not an "acceptable medical source" who can give a medical opinion. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a); SSR 06-03p, 2006 WL 2329939, at *2 (only "acceptable medical sources" as defined under these regulations can provide evidence which establishes the existence of a medically determinable impairment and give medical opinions). In any event, plaintiff has not pointed to any evidence which indicates that the functional limitations set forth in the OBVR report would preclude her from performing her past relevant work as a day care worker either as she actually performed the job or as the job is generally performed in the national economy. To the contrary, the functional limitations listed in the report appear to be consistent with the job duties of day care worker as described by plaintiff and as set forth in the DOT. Accordingly, the ALJ did not err by failing to consider the OBVR report.

Nor did the ALJ err by failing to properly weigh Dr. Trivedi's opinion. Dr. Trivedi issued an assessment in July 2012 stating that he had been treating plaintiff for one year and had seen her six times. (Tr. 494-98). Dr. Trivedi listed plaintiff's diagnoses as hypertension, hyperaldosteronism (the overproduction of aldosterone, a hormone which affects kidney function)[5], hyperlipidemia, muscle spasms, and glaucoma. (Tr. 494). He reported "neck/arm pain from spasms/back," and he stated that plaintiff's muscular pain improved with medication. (*Id.*). He described plaintiff's prognosis as "good." (*Id.*). The only clinical finding and objective sign he listed was a CT scan showing an enlarged right adrenal gland. (*Id.*). Dr. Trivedi explained that plaintiff's hyperaldosteronism and hypertension were treatable and he deferred her glaucoma prognosis "to Eye Clinic." (Tr. 495). Dr. Trivedi reported that plaintiff's experience of pain or other symptoms "excluding glaucoma" would "rarely" be severe enough to interfere with the attention and concentration needed to perform even simple work tasks. (*Id.*). Dr. Trivedi indicated that plaintiff was capable of only "low stress jobs," explaining that she was "not physically restricted, only restricted by vision." (*Id.*). Dr. Trivedi opined that plaintiff could walk 15 city blocks without rest or severe pain; she could sit 15 minutes without interruption; she could stand 15 minutes without interruption; she could sit and stand/walk less than two hours each in an 8-hour working day and she would need to walk every 15 minutes; she would need 5-minute rest breaks every hour; she could frequently lift less than ten pounds and occasionally lift less than ten pounds; she could never twist, rarely stoop, and occasionally climb stairs; and she would miss about four days of work per month due to her impairments or treatment. (Tr. 495-97).

---

[5] *See Henning v. Colvin*, No. 3:13-cv-753-H, 2014 WL 4364622, at *2 (W.D. Ky. Sept. 3, 2014).

15

The ALJ gave Dr. Trivedi's assessment "very little weight" on the ground it was "internally inconsistent." (Tr. 23). The ALJ noted that Dr. Trivedi restricted plaintiff to less than sedentary work by finding she could sit, stand and walk for less than two hours each in a workday and would likely miss a significant number of days due to her condition; yet, Dr. Trivedi also opined that plaintiff was "only restricted by vision" and "otherwise 'not physically restricted'" and that her pain and other physical symptoms would "rarely" interfere with her attention and concentration. (*Id.*). The ALJ reasonably determined that Dr. Trivedi's assessment was internally inconsistent, and he properly discounted the severe limitations imposed by Dr. Trivedi for this reason. *See Haynes v. Astrue*, No. 1:11-cv-185, 2012 WL 174716, at *5 (S.D. Ohio Jan. 20, 2012) (Report and Recommendation) (Bowman, M.J.), *adopted sub nom., Haynes v. Comm'r of Soc. Sec.*, No. 1:11-cv-185, 2012 WL 1019581 (S.D. Ohio Mar. 26, 2012) (Black, J.) (citing *Render v. Sec'y of Health & Human Servs.*, No. 88-5535, 1989 WL 34104, at *3 (6th Cir. April 3, 1989) (it was proper to discount treating physician's opinion which was internally inconsistent)).

Plaintiff argues that even if the report was internally inconsistent, the ALJ was not permitted to simply reject the opinion but was bound by the Social Security Regulations to recontact the treating physician. (Doc. 8 at 8, citing former 20 C.F.R. § 404.1512(e)(1)).[6] Plaintiff's position is not supported by the governing authority or by the record. The current regulations provide that the agency *may* recontact a treating physician "[i]f the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are

---

[6] Section 404.1512(e) has been amended and has been redesignated, "Obtaining a consultative examination." 20 C.F.R. § 404.1512(e).

disabled. . . ." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). These circumstances do not apply here. The ALJ had sufficient evidence to determine the functional limitations imposed by plaintiff's glaucoma, including the consultative examination report of optometrist Dr. Lasse (Tr. 323-29) and the report of state agency reviewing ophthalmologist, Dr. Spitz. (Tr. 394). The ALJ was not required to recontact Dr. Trivedi, who was not a vision specialist and who did not address plaintiff's visual limitations, simply because the ALJ found the treating physician's assessment to be internally inconsistent.

Plaintiff's second assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date: 4/15/2015

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RUTHIE A. CARGILE,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-337
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).